# MILLER *v.* KELLEY.

PATENTS; INTERFERENCE; ORIGINALITY OF INVENTION; DISCLOSURE;
   MASTER AND SERVANT; PRESUMPTIONS; BURDEN OF PROOF.

1. In an interference case involving a match-making machine, where the
   question was not one of priority of invention, but one of originality,
   each party claiming to have conceived the invention which was em-
   bodied by them in a machine constructed in the shop of one of the
   parties, who was the employer of the other, and where the direct
   testimony upon the question of which party disclosed the invention
   was confined to the depositions of the parties themselves, it was *held*
   that the weight of the testimony was with the employer, the collat-
   eral circumstances showing that the latter was an expert machinist
   and well acquainted with match-making machines, while his em-
   ployee had never invented anything and, until he entered his then
   employment, had never seen such a machine, and would not have
   known one if he saw it, and also that the latter refused on his ex-
   amination to answer proper questions.
2. While, if an employee makes an invention wholly independent of his
   employer, the invention belongs to him, and does not inure to the
   benefit of the employer, when in the course of experiment by an em-
   ployer with an invention, a device is suggested for its improvement
   which in itself would reach the dignity of independent invention,
   and a dispute arises between employer and employee as to its con-
   ception, the presumption is in favor of the employer, and it is in-
   cumbent on the employee to overcome that presumption by satis-
   factory proof.

No. 154.  Patent Appeals.  Submitted November 16, 1900.  Decided May 21, 1901.

HEARING on an appeal from a decision of the Commis-
sioner of Patents in an interference case.      *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Prindle & Russell* for the appellant.

*Mr. E. B. Stocking* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This appeal is taken from a decision of the Commissioner of Patents in an interference case, wherein the matter in issue between the parties is defined in nineteen several counts, embracing three classes of improvements in match-making machines, as follows:

" 1. In a match-machine, the combination of a splint-carrier and a splint-evening roll provided with a roughened splint-engaging surface, substantially as specified.

" 2. In a match-making machine, the combination of a splint-carrier adapted to receive and carry splints transversely to the carrier, and parallel evening-rolls located upon opposite sides of said carrier to respectively engage the opposite ends of irregularly-held splints, the axis of said rolls being parallel to the face of the carrier and to the rows of splints.

" 3. In a match-machine, the combination of a splint-carrier, means for feeding splints thereto, dipping mechanism and rolls on opposite sides of said carrier adapted to respectively engage the opposite ends of irregularly-placed splints, substantially as and for the purpose specified.

" 4. In a match-making machine, the combination of a splint-carrier and evening-rolls located upon opposite sides thereof, one of which is provided with longitudinal grooves or depressions, substantially as specified.

" 5. In a match-making machine, the combination of a splint-carrier, evening-rolls upon opposite sides of the carrier, one of which is provided with a roughened periphery and the opposite roll with a grooved periphery, substantially as specified.

" 6. In a match-making machine, the combination of a splint-carrier, and evening mechanism embodying a longitudinally-grooved roll located to engage the ends of irregularly-placed splints, substantially as specified.

" 7. In a match-machine, the combination of a series of splint-engaging bars, a chain or carrier therefor, a device to engage with and move said bars from the latter, and means

to hold said bars in engagement with said device, adapted to permit their release at a certain point in their travel therewith, substantially as and for the purpose specified.

"8. In a match-machine, the combination of a series of splint-engaging bars, a chain or carrier therefor, means for disengaging said bars from the latter that cause them to move in a curved path, and means to hold said bars in engagement with said disengaging means, adapted to permit their release at a certain point in their travel, substantially as and for the purpose specified.

"9. In a match-machine, the combination of a series of splint-engaging bars, carrier-chains therefor, wheels to engage the bars whose peripheries move in paths from which the chains diverge, spring-plates extending concentric with said wheels, having one end free, and means moving the bars from the wheels, substantially as and for the purpose shown.

"10. In a match-machine, the combination of a series of bars, angular in cross-section, the opposing sides of adjacent bars being adapted to engage the splints, a chain for engaging and moving said bars, a bar-engaging device moving in a path diverging from that traveled by the chain, to take the bars from the latter, and means, engaging the sides of the bars, carried by said bar-engaging and moving device, substantially as and for the purpose described.

"11. In a match-making machine, the combination of a series of bars angular in cross-section, a chain for moving said bars, a rotary bar-engaging device moving in a path diverging from the path traversed by said chain, and means carried by said rotary device to engage the sides of the bars when in contact with said device, substantially as specified.

"12. In a match-making machine, the combination of a series of bars angular in cross-section, the opposing sides of adjacent bars being adapted to receive and engage match-splints, a chain for moving said bars, a rotary device for moving said bars in a path diverging from the path of the chain and provided with portions to engage the sides of the bars and retain them in a fixed relation to said device, and

means for disengaging the bars from said rotary device, substantially as specified.

" 13. In a match-machine, the combination of a series of bars, angular in cross-section, the opposing sides of adjacent bars being adapted to engage the splints, a chain for engaging and moving said bars, a bar-engaging device moving in a path diverging from that traveled by the chain, to take the bars from the latter and means carried by said device that engage and hold the bars from movement relative thereto, substantially as and for the purpose specified.

" 14. In a match-machine, the combination of a series of bars, angular in cross-section, the opposing sides of adjacent bars being adapted to engage the splints, a chain for engaging and moving said bars, a bar-engaging device moving in a path diverging from that traveled by the chain, to take the bars from the latter, and means whereby the position of the bars relative to said device may be maintained during the time of their engagement therewith, substantially as and for the purpose set forth.

" 15. In a match-machine, the combination with a series of splint-engaging bars that are angular in cross-section, with pintles at their ends, a chain or carrier for said bars, and toothed wheels to engage said pintles and disengage the bars from the carrier, said wheels having surfaces to engage the bars to prevent the rotation thereof relative to the wheels as the latter revolve, substantially as and for the purpose described.

" 16. In a match-machine, the combination of a series of splint-engaging bars, between adjacent ones of which splints are held, a chain or carrier therefor, a rotary carrier for disengaging said bars from the latter, and means rotating with said rotary device that engage said bars and prevent the rotation of the same on their axis relative to the carrier when carried by the latter, substantially as specified.

" 17. In a match-machine, the combination of a series of splint-engaging bars, between adjacent ones of which splints are to be held, a chain-carrier therefor, means for disengag-

ing said bars from the latter, and positively-acting means that engage the bars while being disengaged and control their rotation on their axis, substantially as and for the purpose set forth.

"18. In a match-machine, the combination of a series of bars, angular in cross-section, the opposing sides of adjacent bars being adapted to engage the splints, a chain for engaging and moving said bars, a rotary bar engaging for moving said bars in a path diverging from the path of the chain, to disengage the bars and chain, portions of which device engage the sides of the bars and hold them in a fixed position relative to the device, means for moving the bars from said device into engagement with the chain again, and means for placing splints in the path of the bars as they are moved after such reëngagement, substantially as and for the purpose set forth.

"19. In a match-machine, the combination of a series of splint-engaging bars that are angular in cross-section, between adjacent ones of which splints are held, a chain or carriage therefor, a rotary carrier device for disengaging said bars from the latter, and means that engage the flat sides of the bars for preventing rotation of said bars on their axes relative to said rotary carrier when carried by the latter, substantially as and for the purpose shown."

Of these counts those numbered 1, 2, 3, 4, 5, and 6 embody the evening rolls placed upon the machine; those numbered 7, 8, 14, and 19 relate to the means employed for carrying the bars through the main head of the machine, that is, the guides, the sprocket-wheel, and the auxiliary chain; and those numbered 9, 10, 11, 12, 13, 15, 16, 17, and 18, refer to the rectangular carrier-bars, the sprocket-wheels with flat-faced hubs for controlling the rotation of the bars, an auxiliary chain for gripping the bar after the next bar has been knocked up to grip the match-splints; means for holding the carrier-bar in the tooth of the sprocket-wheel while space for the match-splints coming from the reciprocating head is being made between the face of the two bars; and spring-fingers to hold back the bars tempo-

rarily in the sprocket-wheel until forced ahead by the knocker.

The appellant, Frederick J. Miller, claims to have made the invention set forth in counts 1 to 6, both inclusive, in the month of January, 1897, when one full-sized machine embodying it, was constructed; and to have made the invention set forth in counts 7 to 19, both inclusive, in the month of December, 1896, and to have then embodied it in a full-sized operative machine. He filed his application in the Patent Office on April 12, 1897.

The appellee, Alexander Kelley, claims to have conceived and disclosed the invention set forth in counts 1 to 6, both inclusive, in 1893; to have made sketches and drawings of it in November of 1896; and to have embodied it in a full-sized operative machine, commenced on August 3, 1896, and completed and successfully tested about February 23, 1897. He claims to have conceived, disclosed, and sketched the invention shown in counts 7, 8, 14, and 19, in the years from 1890 to 1893, both inclusive; to have made a full-sized model of it in October of 1895, and an operative machine in November of 1896. And he claims to have made the invention set forth in counts numbered 9, 10, 11, 12, 13, 15, 16, 17, and 18, about November 18, 1896, when, or within a few days afterward, he embodied it in a full-sized operative machine. The invention embraced in all the counts was embodied in a full-sized match-making machine begun in the appellee's shop in Wilmington, Del., about August 3, 1896, and completed and successfully operated at the same place about February 23, 1897. Kelley came to the Patent Office with his application on June 3, 1898, which was more than a year after Miller's application. It may be added here that there was actual reduction to practice by either one of the contestants about February 23, 1897; and that it is the same act which is relied upon by both parties. Miller was a workman or machinist in the employment of Kelley at the time, and worked upon the machine in question. The controversy, therefore, is not really one as to priority of invention, but as to originality.

In other words, the question is which one of these two suggested the conception which was embodied by them in the machine constructed by Kelley at his shop in Wilmington, Del., between August 3, 1896, and February 23, 1897.

All the tribunals of the Patent Office, the board of examiners-in-chief however with a division, have awarded judgment in favor of Kelley. And from the decision of the Commissioner in that regard, the cause has now been brought here by appeal.

We are of opinion that there is no error in the conclusion reached by the Commissioner of Patents and the tribunals of his Office in this case; and being of that opinion, after full consideration of the record, we deem it wholly unnecessary to review the testimony at any length. It would serve no useful purpose to add another analysis to the three very careful and elaborate examinations of the record made by the tribunals of the Office, when the analysis would merely lead us to the same conclusion. It will suffice for us to say that, in reference to the crucial question in the case, whether the disclosure of the invention, which in this case must determine its parentage, emanated from the appellant to the appellee, or from the appellee to the appellant, the direct testimony is confined to the depositions of the parties themselves; and that the weight of this testimony and its inherent probabilities are in favor of Kelley. In the collateral circumstances there is some corroboration of Kelley, but none of Miller. And every statement of the latter, with reference to matters alleged by him to have taken place in the presence of other persons, is flatly contradicted by those persons. Moreover, the appellant's manner in giving his testimony, as evidenced by the record, and his curt refusals to answer questions put to him, some of which at least he might have readily and properly answered, if he was in good faith, are not calculated to convey a favorable impression of his testimony, or to entitle that testimony to any great weight — although there is perhaps a partial excuse for his course in the fact that he is a foreigner not well acquainted with the English language and not familiar with technical terms.

But there are other considerations which must have weight in the determination of the controversy. Kelley was an expert machinist. He was well acquainted with match-making machines. He was at the time of this invention engaged in experimenting with a match-making machine that would obviate some of the difficulties and deficiencies of previously-existing machines; and he had taken out at least one patent for such a machine. He was desirous to keep his device a secret until it should be perfected; and he suspected that a rival organization was striving to gain possession of his secret. On the other hand, Miller was merely a workman or mechanic, employed by Kelley to assist him with his construction, who was in Kelley's employment only from October 12, 1896, to March 2, 1897, who had never before invented anything, who was a rover and a wanderer remaining not long in any employment, and who at the time of his entrance into Kelley's employment admitted that he had no knowledge of match-making machines, and would not know one if he saw it. While it was not impossible that he should make this invention, he certainly was not qualified for it by any previous training, and the probabilities of his making it are all against him.

But even if the testimony on behalf of Miller were greatly stronger than it is, and if it could be said to balance that of Kelley, which we do not think it does, yet there still remains the strong presumption against him arising from the relation of employer and employee subsisting between Kelley and himself. It was well said by Mr. Commissioner Marble in the case of *Harrison* v. *Hogan* (18 O. G. 921), that "it is a familiar doctrine that as between an employer and a party employed for a special purpose, matters merely auxiliary or tributary to the main invention can give to the employee no claim as an inventor, and in regard to such features as amount to independent inventions a presumption exists in favor of the employer as the author of the same which can only be overcome by conclusive and unequivocal proof."

This doctrine the Commissioner has cited as applicable in the present case; and he adds:

"No sufficient proof has been presented in the present case to overcome the natural presumption from the relations of the parties; but, on the contrary, the evidence as a whole tends to support that presumption."

We think that this conclusion is fully warranted by the record, and that the doctrine announced is a fair and just exposition of the law, and is decisive of this case.

We do not mean, of course, to be understood as holding or sanctioning the idea that the employee's intelligence is all for the time being given over to the employer, and that the employee retains no independent power of invention. On the contrary, the employee is to be protected from the rapacity of the employer, as much as the employer from the dishonesty of the employee: and if the employee makes an invention wholly independent of the employer, it is the law that the invention belongs to him who actually makes it, and that it does not inure to the benefit of the employer. What we hold is that when in the course of experiment by an employer with an invention a device is suggested for its improvement which in itself would reach the dignity of independent invention, and a dispute arises between employer and employee as to its conception, the presumption is justly in favor of the employer, and it is incumbent on the employee to overcome that presumption by satisfactory proof.

We conclude that the decision of the Commissioner of Patents in favor of the appellee should be affirmed; and it is hereby *affirmed.*

*The clerk of the court will certify this opinion and the proceedings in the cause in this court to the Commissioner of Patents according to law.*