## DE FOREST v. RICHARDS.

(Court of Appeals of District of Columbia. Submitted January 19, 1920.
Decided March 1, 1920.)

No. 1286.

1. PATENTS ⬅91(4)—EVIDENCE HELD TO SHOW THAT PATENTEE WAS INVENTOR OF SUBJECT OF INTERFERENCE.

In an interference proceeding between a patentee of relays of the gaseous type, known as audions, who applied for a patent on an improvement consisting of means for preventing the instrument from becoming inoperative under certain conditions, and one obtaining a patent for the same improvement, evidence *held* to show that the first patentee was the original inventor of the matter involved, and disclosed the invention at a demonstration of his instrument at which the subsequent patentee was present.

2. PATENTS ⬅113(6)—CLAIMS INVOLVED IN INTERFERENCE CANNOT BE NARROWED ON APPEAL TO MEET EXIGENCIES.

Where the claims of a patent application involved in an interference proceeding are broad and general, they cannot be given a narrower interpretation on appeal to meet the exigencies of the case.

Smyth, Chief Justice, dissenting.

Appeal from a Decision of an Assistant Commissioner of Patents.

Interference proceeding in the Patent Office between Lee De Forest and Wilton L. Richards. From a decision awarding priority to Richards, De Forest appeals. Reversed.

Samuel E. Darby and Samuel E. Darby, Jr., both of New York City, for appellant.

D. C. Tanner, J. G. Roberts, and W. E. Beatty, all of New York City, for appellee.

ROBB, Associate Justice. This is an appeal from the decision of an Assistant Commissioner of Patents awarding priority to Richards.

De Forest, in 1907 and 1908, was granted patents on relays of the gaseous type, known in the art as audions. The invention in issue is an improvement on an audion, and is thus described by the Examiner of Interferences:

"It is an improvement on the so-called 'audion,' which comprises a receptacle from which substantially all gases have been removed, having therein a terminal or electrode adapted to be heated from some external source, and two cold electrodes located at relatively different distances from the hot electrode. It is unnecessary to describe the structure in detail. It is sufficient to say that under working conditions the instrument may become inoperative because of what are probably static charges upon certain of the terminals. This condition was usually indicated by a so-called 'blue glow' visible between the electrodes, although under certain conditions the phenomenon seems not to be visible. In order to overcome this condition the two electrodes have been connected by a high resistance or so-called 'leak path,' so that the charges on the electrodes may neutralize each other. It is this high resistance connection that constitutes the gist of this invention."

The invention is comprised in nine counts, of which the third and sixth are illustrative and are here reproduced:

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"3. An electric relay comprising an evacuated vessel, a heated member, a conducting member and a conducting plate sealed therein, an incoming circuit connected across said heated member and said conducing member, and outgoing circuit connected across said heated member and said conducting plate, and an additional metallic circuit connecting said conducting member and said plate."

"6. In an electric relay, the combination with an audion of a circuit, including a resistance in shunt of two of the elements of said audion."

[1] It will be observed that these are broad claims. As stated by the Assistant Commissioner, the invention "might perhaps be better called a discovery that the paralysis of an audion may be removed by discharging certain charges on the terminals." We now will turn to the evidence. De Forest, a pioneer in this art, after producing the audion covered by his patents subjected it to numerous tests which, it is conclusively established, demonstrated that under certain conditions the audion becomes inoperative. Several witnesses, including witnesses for Richards who· were present and participated in those tests, corroborate De Forest on this question, and from their testimony it conclusively appears that, long prior to Richards' entry into the field, De Forest not only recognized the difficulty giving rise to the invention of the issue, but suggested various means to overcome it, which means accomplished the purpose. The paralyzed condition of the audion usually was neutralized by touching the terminals with the thumb and finger, thereby permitting the discharges to neutralize each other through this high resistance connection. Liquid resistance, wet strings, gum, and a coroborundum rod also were used.

In October of 1912 De Forest demonstrated his audion to the Western Electric Company, and Richards, one of its engineers, was present during the demonstration. He knew practically little about the art at that time. However, he claims that the invention in issue occurred to him during this demonstration, while De Forest insists that he (De Forest) then suggested and—

"pointed out and illustrated that this last condition [paralyzed condition] could be instantly corrected by touching the thumb and fingers across the grid and filament of plate binding posts on the audion instrument."

We agree with the Examiner of Interferences that the testimony and surrounding circumstances overwhelmingly sustain De Forest on this point. It is utterly inconceivable that this man, who was the originator of the audion, who previously had subjected it to tests, who had discovered that under certain conditions it would become inoperative, and who also had discovered how that condition might be overcome, would have failed to impart his knowledge under the circumstances disclosed. That the information he gave Richards amounted to a complete disclosure of this invention is beyond question. Of this information De Forest says in his testimony:

"This illustration was, of course, all that was necessary to show to a skilled engineer that a high resistance leakage path between the two audion electrodes would remedy or tend to remedy a condition of 'paralysis' due to too large a negative charge coming on the grid."

One of Richards' witnesses was asked on cross-examination what suggested to him the idea of permanently connecting a resistance between the electrodes of the audion, and answered: "The fact that a temporary resistance would discharge the audion." In other words, the various expedients resorted to by De Forest long prior to Richards' entry into the field clearly suggested the device of the issue.

[2] As already noted, the claims are broad and general, and it is not now permissible to meet the exigencies of the case by giving them a narrower interpretation. Geltz v. Crozier, 32 App. D. C. 324; Leonard v. Horton, 40 App. D. C. 22; Kirby v. Clements, 44 App. D. C. 12; Monte v. Dunkley, 46 App. D. C. 70. We rule, therefore, that De Forest and not Richards was the inventor of the subject-matter of the counts, and accordingly reverse the decision of the Patent Office.

Reversed.

SMYTH, Chief Justice, dissents.