37 C.C.P.A.(Patents)

**BALOGH v. CROT.**

**Patent Appeal No. 5601.**

United States Court of Customs and Patent Appeals.

June 28, 1949.

Rehearing Denied Oct. 4, 1949.

924

Richey & Watts and H. F. McNenny, Cleveland, Ohio (Watts T. Estabrook, Washington, D. C., of counsel), for appellant.

Albert L. Ely, Akron, Ohio, for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

JACKSON, Judge.

This is an appeal in an interference proceeding from a decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter contained in three counts to appellee.

The interference involves the application of appellant, No. 515,672, bearing the filing date of December 27, 1943, and assigned to the Weatherhead Company of Cleveland, Ohio, and the application of appellee, serial No. 501,354, filed September 6, 1943, and assigned to the Lockheed Air Craft Corporation, Burbank, California.

Count 3 is representative of the counts in issue and reads as follows:

3. A fluid conducting joint adapted to be connected between two fluid handling elements, the joint comprising a socket unit and a ball unit, said units being related for relative universal movement, a tubular member carried by one of said units for relative axial movement, means on the member for facilitating its connection with one of said fluid handling elements, means on one of said units for facilitating its connection with the other fluid handling unit, and means for separately balancing the axial fluid pressures acting on said ball unit and said member, comprising isolated areas balanced against each other and oppositely disposed relative to a transverse plane through the ball unit and subjected to the internal fluid pressures in said joint, means sealing the inner end of said tubular member, and means exposing the exterior surface of said sealed inner end to atmospheric pressure.

The invention relates to a flexible joint for high pressure fluid lines. The joints are designed to connect two rigid conduits in such manner that rotary, swinging, and longitudinal movements between the conduits are permitted. It is said that friction opposition in the movement of the flexible joint is reduced for the reason that the forces exerted by the fluid pressure on the relatively movable parts are neutralized or balanced by an oppositely acting pressure. The devices of the parties are quite similar, the principal difference being that the outlets in the device of appellant are at right angles to one another, while those of appellee's device are in alignment. Each device comprises an outer casing to which one of the outlets is attached and within which there is a socket containing a ball, mounted with sealing means between the ball and the socket so that no oil will be lost while the ball is rotating. A rotatable tube, seated in the ball, moves axially therein. That tube is the outer outlet of the flexible joint. Between the tube and the interior of the ball, sealing means are provided in order that the tube may rotate and reciprocate without the fluid leaking, and also sealing means are provided to prevent the escape of fluid between the ball and its socket. That sealing means is mounted in the socket of device of appellant and in the ball of the device of appellee. The tube of appellant's device is closed at one end and exposed to the atmosphere for the purpose of balancing atmospheric pressures acting on the tube. In the device of appellee, that result is obtained by means of a small passageway leading to the atmosphere. It is said that the corresponding oppositely located areas, which are subjected to fluid pressures, are made equal so that the resultant forces in the joint due to fluid pressure are zero, and consequently there is

no tendency to force the ball against the wall of the socket and likewise none to drive the tube in piston fashion to one end of its travel.

Both parties took testimony, filed briefs, and were represented at the final hearing before the board.

Appellant, being the junior party, had the burden of proving priority of invention by a preponderance of the evidence.

It is conceded by appellee that appellant is entitled to prior conception of the invention as of the date, September 22, 1942. Such concession was noted by the board in its decision.

Appellee contended below that, although appellant was the first to conceive the invention, he did not actually reduce it to practice, and he is therefore confined for constructive reduction to practice to the date of the filing of his application, December 27, 1943, and also that the earlier conception is of no avail by reason of lack of diligence, from just prior to the time appellee entered the field, April 30, 1943, as was properly held by the board, until the filing date of appellant.

Appellant contends that the proofs show that he made an actual reduction to practice by reason of certain tests, and that, therefore, being the first to conceive the invention and the first to reduce it to practice, he is entitled to an award of priority. It is further contended by appellant that even if it be found that his tests were not sufficient to amount to actual reduction to practice, that, nevertheless, he exercised due diligence during the critical period in reducing the invention to practice constructively by the filing of his application.

The record discloses that appellant's claimed actual reduction to practice is based upon certain laboratory tests, which were made in June 1943, of a device in evidence, which was made from working drawings also in evidence. The tests consisted in closing one end of the fitting and applying oil pressure to the other end and while the pressure was on subjecting the fitting to "torque tests of the swiveling in the ball, the ball swiveling in the body, and also the lateral motion of the bolt being pushed back and forth in the ball at various pressures." The extent of the torque was measured by a spring balance.

It appears that the fitting was designed for actual use where the developed pressure was 1,600 pounds per square inch and that the pressure used, according to a report in evidence, was as high as 2,000 pounds per square inch, and, as testified to by appellant, as high as 2,500 pounds.

The purpose for which the devices of the parties were made was to replace flexible hose lines, and, as testified to by appellant, he had in mind that the particular application of his device was for use in the hydraulic brake on the landing gear of an airplane and like parts thereof.

Tests similar to those already described were made by appellant with modified fittings in October 1943, as appears from a laboratory report in evidence.

Appellant in his testimony admitted that his tests were made in a laboratory but stated that while no tests were actually made in the service for which they were intended, he had attempted to duplicate such service as nearly as possible. He admitted that when swivel joints are mounted in the landing gear of an airplane they are subjected to movement of forces which can not be duplicated in a laboratory, so that oil or other fluid, which is being used, flows through the joints. He further stated that in his tests one end of the device was capped. When the device is capped, of course, there can be no fluid flow, and appellant stated that no test was made for the flow of the lubricating fluid because, "the original application was on a brake line and due to the fact that the flow in the brake line was so small, and the displacement was so small, we didn't think it was necessary in this case to run flow tests," although he admitted that the fluid line in the fitting transmits fluid to and from the brake cylinder. Despite those admissions, appellant testified that he considered the tests sufficient to justi-

fy him or his company in going into actual commercial production without tests in actual service.

■ There is no limitation in any of the counts of intended use. It may be observed that the illustrative count, as do the other counts, merely provides for a fitting. However, proof of actual reduction to practice, which demonstrates successful operation under the actual conditions in which it was designed to work, is necessary. Chandler v. Mock, 150 F.2d 563, 32 C.C.P.A., Patents, 1183.

While it is vigorously contended by appellant that neither his application nor his claims limit the use of the device disclosed therein to an airplane structure, nevertheless, the only intended use of that device, as disclosed by the record, is with relation to the landing gear and like parts of an airplane.

■ It is obvious that actual working conditions were not present in the making of appellant's tests. It is not sufficient to establish reduction to practice merely to show that the device withstands pressure for five minutes and durability for only a few swivel movements. Clearly such proof does not demonstrate that the fitting was satisfactory for its intended purpose, as is disclosed in the record. In this respect we deem it informative to quote from the decision of the board as follows:

It is conceivable that the sealing rings would function for a few minutes or a few movements, under laboratory temperatures and in the absence of vibration and yet fail if used for longer periods, after a greater number of movements, under the temperatures and vibration encountered when such a fitting is used in connection with an airplane. We hold, therefore, that the party Balogh has failed to prove actual reduction to practice. Therefore, the date of the filing of his application on December 27, 1943, is the earliest date to which Balogh is entitled for reduction to practice. * * *

We think it is clear on the record here that neither appellant nor his assignee considered his device to be satisfactory prior to the date of filing appellant's application. About that time, December 27, 1943, it was known to those skilled in the art that because of the war there was a great demand in the airplane industry for a replacement of the flexible hose by some practical device. Appellant's assignee at that time was very much concerned in the manufacture of accessories for airplanes and prior and up to the filing date of appellee, appellant's assignee, who had been apprised of appellant's device, sought to obtain a license from the assignee of appellee to manufacture the latter's fitting. That is strongly indicative to us that appellant and his assignee had little or no faith in his device at that time. As further evidence that appellant did not think his device was satisfactory, it is disclosed in the record that he worked only from time to time on a development of his fitting until finally he made a preferred design, which is shown in an exhibit bearing the date of March 21, 1944.

The board in its decision pointed out that appellant made a tabulation with respect to his activities during the critical period and stated that the last entry prior to April 30, 1943, was a request in evidence bearing date of February 18, 1943, to design a mold for seals for appellant's complete fittings. The board held that from that date until April 30, 1943, there was no activity on behalf of appellant and in connection with that holding it quoted from the testimony of appellant as follows:

XQ164. I note that these drawings of Exhibit 10 A to F, inclusive, were made on January 22, 1943, and the purchase requisition is dated May 7, 1943; that is correct, is it not? A. Yes.

XQ165. There is no record before us here today as to anything having been done in the interim, is there? A. I believe that we tested out samples of the ball alone before that.

XQ166. But those tests were not made on a device in which there was what you call the push and pull operation? A. That is true.

XQ167. Now that is all you did in the interim between the making of the drawings on January 22, 1943, and the purchase order of May 7, 1943? A. Yes.

It was claimed both in the testimony and in the brief of counsel for appellant that it was useless during the period between February 18, 1943, and April 30, 1943, to give an order for the device, called for in a drawing in evidence of January 22, 1943, because the shop which did the work of appellant's assignee "was loaded with other jobs for us" and appellant knew the work could not be done because this was during the war period, and therefore the order was held up for several months.

We are of opinion, as was the board, that such excuse is not satisfactory to explain inactivity on the part of appellant for a period of over two months. Surely the order could have been placed immediately, even though, due to press of other work, it could not be filled at once. Furthermore, it does not appear that any effort was made to give the order to any other shop, nor why an order to prepare a patent application was not docketed by counsel for appellant until June 2, 1943, although counsel had been consulted concerning the invention in January of that year.

Since it has not been shown that appellant made reasonable efforts to surmount any delays that he may have encountered in arriving at his actual reduction to practice, or that he did not promptly file his application to obtain constructive reduction thereof, we are constrained to hold that he did not exercise due diligence during the critical period, as aforesaid.

Careful consideration has been given to the great number of cases cited by appellant in support of his contentions, but since none of them are applicable to the state of facts before us, it is unnecessary to discuss them.

For the reasons given, the decision of the Board of Interference Examiners is affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.