40 C.C.P.A.(Patents)

### CHANDLER v. MOCK.

### MOCK v. CHANDLER.

**Patent Appeal Nos. 5911, 5895.**

United States Court of Customs and Patent Appeals.

Feb. 6, 1953.

Rehearing Denied April 10, 1953.

A. M. Prestiss, West Hartford, Conn., for Mr. Chandler.

K. G. Doub, Washington, D. C. (E. C. Naylor, Washington, D. C., of counsel), for Mr. Mock.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

O'CONNELL, Judge.

Appellant Chandler has appealed here from a decision of the Board of Interference Examiners of the Patent Office awarding to appellee Mock priority of the invention defined by the single count in issue. The interference involved application No. 524,534 filed by the senior party Mock March 1, 1944, and patent No. 2,485,430 granted to the junior party Chandler October 18, 1949, on an application filed November 17, 1944. The latter embodied claims for new and useful improvements in carburetors, and the count was copied from claim 11 of the patent, which reads as follows:

"A carburetor comprising an air passage with an air supply and a liquid fuel supply thereto, means for supplying fuel to said air passage in proportion to the velocity of air flow therethrough, and means for compensating said fuel supply for variations in density of said air supply, including an element, insensitive to ambient temperature changes, but responsive to the pressure of said air supply, operatively associated with an element responsive to the temperature of said air supply and insensitive to the pressure thereof."

Both parties took testimony, filed briefs, and were represented by counsel at the final hearing. The board properly noted that the automatic control means which Chandler sought to improve by the development of the invention of the count was the standard commercial carburetor 58 CPB–4 used on engines manufactured by the Wright Aeronautical Company; that these engines supplied by such carburetors were in actual service on airplanes; that Wright by specific data had indicated to Chandler the extent to which the standard carburetor deviated from supplying a fuel mixture of the desired proportions, and that such deviation was due to the fact that the automatic mixture control means, which was responsive to changes in air pressure and temperature, did not accurately respond to changes in air temperatures.

The automatic mixture control means of the standard carburetor hereinbefore described was a unitary device in the form of a gas filled bellows which, as the board noted, Chandler utilized in the following manner to accomplish the objects of the invention, asterisks being substituted here for references to the schematic drawings:

" * * * Chandler filled the bellows * * * with a liquid, which is substantially insensitive to ambient temperature; he placed a gas filled bulb or tube * * * in the air passage * * * of the carburetor, and connected the bellows with the bulb by a small conduit * * *. The gas bulb being inflexible is insensitive to air pressure changes, but it is responsive to air temperature variations due to the fact that the gas in the bulb, expanding with higher temperatures, increases the pressure transmitted to the interior of the bellows by the conduit * * *.

"Such a device was built and substituted for the 'automatic mixture control' in a standard carburetor 58 CPB–4. The resulting carburetor was was designated as 58 CPB–4 No. 9,500, also referred to in the record as 58 size carburetor No. 9,500, or carburetor No. 9,500. * * *"

The board in its decision held that while Chandler's proofs clearly established his prior conception of the invention in October of 1943, nevertheless Chandler was the last to reduce the invention to practice due (1) to the insufficiency of the tests of the apparatus upon which he relied for actual reduction to practice, and (2) his failure to couple his earlier conception with an adequate showing of diligence during the critical period when Mock entered the field. Accordingly, the filing date of Chandler's application, November 17, 1944, was the

earliest date, the board held, to which Chandler was entitled for constructive reduction to practice.

Chandler is satisfied with that part of the board's decision with respect to his earlier conception of the invention but appeals from the remainder of the decision. Mock has cross-appealed from the first part of the board's decision favorable to Chandler. By stipulation of the parties the two transcripts of the record below have been consolidated into a single record, which thereby constitutes the basis of the dual proceeding here on appeal. The consolidated record also discloses the position taken by the respective parties as well as the board on Chandler's unsuccessful petition for reconsideration and reversal of the board's decision. The introduction of Chandler's said petition is deemed pertinent to the following effect:

"The invention defined by the count here in issue is one of great practical value to the aircraft carburetor art and covers a wide variety of commercial applications. It is therefore a notable contribution in the field of aircraft carburetor production, and it is, accordingly, urged that the question of priority in this case be weighed and decided on a realistic basis of broad practical considerations, rather than upon rules of evidence construed with legalistic rigidity. * * *"

Chandler vigorously contends here as he did below that prior to Mock's filing date of March 1, 1944, Chandler by active diligence actually reduced the invention device to practice by satisfactory performance tests, completed February 7, 1944, at the Dayton, Ohio, plant of Chandler's assignee, and that the device so tested was placed without material change in commercial use by the Wright Aeronautical Company on airplanes in actual service of the armed forces of the United States.

The tests hereinbefore described for compensating the fuel supply of a carburetor for variations in density of the air supply thereto were made by Chandler in an "air box" at the Dayton plant. Four of his corroborating witnesses who testified concerning these "air box" tests stated unequivocally that they were performed under conditions which simulated actual flight conditions, and the result of such tests established that Chandler's invention device performed not only in a successful manner but obtained even better results than those produced by the standard Chandler-Evans air density compensating device then used in actual flight by the Armed Services.

The testimony in behalf of the party Chandler was accompanied by unchallenged contemporaneous and detailed test records. Chandler therefore expresses here the belief that the refusal to award priority to him rested upon *"speculative inferences"* by the board which constituted no valid basis upon which to overrule the testimony in support of Chandler's position by the highly qualified witnesses and the records introduced in evidence.

■ When an issue between contending parties as to the priority of invention is decided in the Patent Office, the decision there made must be accepted as controlling upon that question of fact in any subsequent litigation between the same parties, unless the challenged decision is manifestly wrong and the contrary is established by testimony which in character and amount is altogether convincing. Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657.

■ The board in reaching its conclusion properly proceeded in accordance with an established principle of patent law that tests of a complex mechanical device consisting of an aircraft carburetor must establish that the carburetor would satisfactorily operate under conditions of use, real or simulated, for which it was intended to function; namely, flight conditions, citing Chandler v. Mock, 150 F.2d 563, 32 C.C.P.A., Patents, 1183; Burns v. Curtis, 172 F.2d 588, 36 C.C.P.A., Patents, 860; Powell v. Poupitch, 167 F.2d 514, 35 C.C.P.A., Patents, 1080; Balogh v. Crot, 176 F.2d 923, 37 C.C.P.A., Patents, 707. See also Kruger v. Resnick, 197 F.2d 348, 39 C.C.P.A., Patents, 994; Mock v. Johnson, 52 App.D.C. 300, 286 F. 639; Paul v. Hess, 24 App.D.C. 462. On that basis the board held as follows:

"It is our opinion that the Dayton 'air box' tests did not amount to reduction to practice. These tests simulated air temperature and air pressure conditions encountered in actual flights, but there is no proof that they simulated other flight conditions. The Dayton 'air box' tests did not involve engine tests and there is no showing that they involved vibrations tests. It is.true that the Wright Aeronautical tests in November 1943. involved engine tests, but the data pertaining to these tests is not before us, and there is no other satisfactory proof that these tests were so successful as to amount to reduction to practice. The mere conclusions of the witnesses as to the results of such tests cannot be accepted as proof. It is also true that the witness Hackett testified that he made vibration tests of the device. These tests, however, were made at another place and time from the Dayton tests. In our opinion the vibration should be concurrent with the other flight conditions in order to simulate flight conditions. Furthermore, in flight there might be tilting of the carburetor. There is nothing in the record to show what would happen when the carburetor with the oil filled bellows and gas bulb was tilted. Would the oil leave the bellows and fill the bulb and would the oil return to the bellows when the carburetor was righted, or would bubbles of gas in the oil result in interference with the operation of the device? And what would be the operation of the device while the carburetor remained tilted with the oil in the bulb and the gas in the bellows?"

■ There appears to be no manifest error in the foregoing decision of the board on the validity of the tests involved and those tests, admittedly, constitute the crux. of the issue as to Chandler's principal claim of a prior reduction to practice. Here we have a new automatic mixture control unit. which embodies a major change in design amounting to invention. The practicability of the invention should have been established by timely tests which adequately embraced the essential conditions which the carburetor would be required to meet in actual service on an airplane.[1] In Chandler's environment and with his wide connections in the aircraft industry, the requirement seems relatively simple.

■ Chandler takes exception to the board's holding that he failed to prove diligence during the critical period of the four months between March 1, 1944, and June 30, 1944. Clark, the patent attorney, worked on the preparation of Chandler's application during July, August, and September of 1944, and to some extent through October and November until it was filed on November 17, 1944. The evidence adduced by Chandler as to Clark's alleged "active engineering development" during the said period does not meet the require-

[1]. Appellee Mock makes the following contention in his brief on the point in issue:
"There are a number of reasons in addition to those specified in the Board's decision why actual flight test cannot be duplicated in an air box. For example, consider 'scoop effects'. It is not practical to have the air scoop any appreciable distance away from the body of fuselage of the airplane, and hence there is a relatively sharp elbow or bend where the scoop connects with the carburetor. At this bend or elbow, the air tends to stratify and produce varying temperatures in the region of the density compensating unit. Again, due to the proximity of the scoop to the engine propeller, turbulence in air flow takes place which results in conditions impossible to duplicate in the air box. Another is the effects resulting from adjustment of the hot air door or damper usually provided to prevent icing in the carburetor. Still another is the pressure effects which take place in turbo supercharged engines at high altitudes. In this case, the turbo supercharger tends to maintain the required pressures (which may be sea level pressure or greater) at the deck or entrance to the carburetor, while at the same time the atmospheric pressure around the regulator and jet system of the carburetor is at an extremely low pressure. This tends to require changes or adjustments in the A. M. C. unit which would not show up in the air box. Thus, inversion and vibration of the carburetor are only a few of the factors to be considered."

ment of the law with respect to diligence. Ireland v. Smith, 97 F.2d 95, 25 C.C.P.A., Patents, 1258; Grundy v. Van Leir, 75 F.2d 503, 22 C.C.P.A., Patents, 1034.

In view of the conclusions hereinbefore expressed, it is deemed unnecessary to present and discuss other points raised by counsel for the parties in their respective appeals. The decision of the Board of Interference Examiners awarding priority to the senior party Mock is affirmed.

Affirmed.