41 C.C.P.A.(Patents)

## ROENSCH v. BILLNER.

### Patent Appeal No. 6028.

United States Court of Customs and Patent Appeals.

April 9, 1954.

Pennie, Edmonds, Morton, Barrows & Taylor, Washington, D. C. (Clarence M. Fisher, Washington, D. C., and W. Brown Morton, Jr., New York City, of counsel), for appellant.

James P. Burns and Raymond W. Colton, Washington, D. C., for appellee.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter embraced in two counts to the appellee.

The interference proceeding involves the application of appellant, Serial No. 75,416, filed February 9, 1949, entitled "Method and Apparatus for Making Building Panels," and an application of appellee, Serial No. 768,001, filed August 11, 1947, and entitled "Molding."

It appears that the interference, as originally declared, was between appellee's application and a prior joint application of appellant and others, Serial No. 745,322, filed May 1, 1947, entitled "Building Panels and Method of Making Same." Subsequently the sole application of appellant was substituted for the joint application. Therefore, appellee is the junior party and has the burden of proving by preponderance of evidence priority of the invention. The involved counts read as follows:

"1. A molding method comprising introducing a plastic composition comprising portland cement and water in excess of that required for hydration into a plurality of spaced open molds, shifting at least one of said molds in opposition, partially embedding a common spacing member in the composition of each mold before said composition has set in either mold and producing a sub-atmospheric pressure intermediate a portion of each mold and its composition to withdraw a portion of said excess water and retain the plastic composition in place.

"2. Panel molding apparatus comprising a pair of spaced open mold frames each having side walls and a filter bottom, means for applying a vacuum to the filter bottoms of the mold frames, means for inverting one of said mold frames to place said mold frames in opposition to each other, and means for relatively moving said mold frames toward and away from each other when they are positioned in opposition to each other, said vacuum applying means adapted to remain secured to the filter bottoms of the mold frames in all positions on the mold frames."

The appellant's assignee is the American Type Founders, Incorporated of Elizabeth, New Jersey, which by change of name was afterward known as "ATF Incorporated" and, as stated in the brief of appellant, now "Daystrom Incorporated." The application of appellee is assigned to "Vacuum Concrete, Inc." of Philadelphia, Pennsylvania.

As may be noted from a reading of the counts, the interference relates to an apparatus and a method employed in the production of a molded plastic panel, which comprises two molded bodies in spaced relationship maintained by a spacing member which is partially embedded in each of the molded bodies.

The issue is one of originality for the reason that both parties rely on the same reduction to practice of the invention.

It appears that appellant, an architect, was engaged by "ATF" to pursue work in the manufacture of concrete building panels such as is disclosed in a Foster patent, No. 2,305,684. That patent related to the construction of floor, roof, and wall panels for low cost buildings and fire resisting buildings and was said to provide a cheap, lightweight, moisture, heat, and sound-proof building panel of fire resisting materials designed to meet many varieties of services.

The panel of that patent comprises two molded concrete slabs which are maintained in spaced parallel position to each other by means of a common spacing and reinforcing member which is partially embedded in each of the molded slabs. The idea is well set out in the first claim of the patent, which reads as follows:

"1. The method of forming a building panel by casting a body layer of cementitious material in a removable form coextensive in length and breadth with said panel, partly embedding therein reenforcing members of greater depth than said body layer to project therefrom, permitting said layer to harden, inverting said form coextensive in

length and breadth with said panel above a second form containing a soft body layer of cementitious material and placing the projecting reenforcing members into said soft material to a depth less than their projecting portions and spacing the body layers parallel and apart to the overall dimension desired, whereby said reenforcing members serve to support and maintain said body layers with a space between them when the body material has hardened." (R. 276,277)

The method disclosed in the Foster patent produces a satisfactory construction panel but, by reason of the length of time which is necessary for the slabs to remain in the molds until the plastic materials set and harden, the use of the method was not considered practicable.

Appellant's work with respect to that method was to solve the problem of shortening the necessary time for the slabs to remain in the molds. One of the expedients in that respect was the addition of gypsum to the plastic material which was Portland cement. The setting time was reduced by such mixture but the panels were unsatisfactory for the reason that appreciable amounts of gypsum are adversely affected by weather.

A further attempt to reduce setting time was by the removal of excess water from the mix and the use of suction for that purpose was suggested to appellant by the man in charge of the Duffy Construction Company, where these experiments were being made at Weehawken, New Jersey.

Pursuant to that suggestion, appellant contacted appellee's assignee on May 3, 1945 by telephone and the problem was discussed. It appears that the notion was to apply reduced pressure to the plastic slab in order to remove the excess water, thereby hastening the setting and hardening of the slab, which would result in a reduction of the necessary time for the slab to remain in the mold. That concept was old and fully anticipated by a patent to appellee, No. 2,046,867.

When appellee first entered the picture appellant arranged to transmit to the Vacuum Concrete, Inc. plant in Philadelphia from the Duffy plant at Weehawken aggregate and reinforcing materials. This occurred on or about May 16, 1945 and the materials arrived at the laboratory of appellee's assignee shortly thereafter.

Work was then started on the project in Philadelphia while appellant remained in or about Weehawken. We find nothing in the record to indicate that appellant was in the city of Philadelphia or had anything to do with the work that was being done there.

The record clearly shows that the conception of the reduction of pressure when applied to a plastic slab could be used, not only for the purpose of extracting excess water, but further to support the plastic slab in the mold when the mold was inverted. That, in essence, is the inventive concept of the present controversy.

A demonstration of the invention was made in Philadelphia in the latter part of May 1945. It was not entirely successful but, as far as it went, the assignee of appellant appeared to be favorably impressed.

Subsequently the Vacuum Concrete, Inc. sent its technician with equipment to the Duffy plant at Weehawken and there was completed, under the direction of the technician, a reduction to practice.

It is clear to us, as stated by the Board, that the work of appellant prior to May 3, 1945 cannot support the conception of the invention as is set out in the counts.

In arriving at that conclusion, the Board quoted from the testimony of appellant as follows:

"No. We had never done anything but theorize on the principle of how to do it. That was the reason for calling. I had never heard of Mr. Billner and we arrived at that as a fundamental means of achieving our end *but we had never used vacuum or applied vacuum in any*

*way* because from there on our experiments with vacuum were completely in cooperation with and in consultation with Mr. Billner and his group." (Italics supplied.)

Obviously, as hereinbefore mentioned, when appellant telephoned the company of appellee he possessed nothing but a problem with no specific conception except the theoretical possibility of employing vacuum to remove water and thus accelerate setting of the concrete slab. All of that, as has been noted, had previously been fully anticipated by appellee's patent No. 2,046,867.

Counsel for appellant has vigorously contended that all of the work which was done by appellee's company was at the direction of appellant and resulted from his conception and, therefore, in view of such contention, we deem it proper, as did the Board, to discuss the circumstances surrounding the involved invention.

Appellant is an architect and the record does not show that he had any material experience in the concrete panel art. Appellee was shown to be known internationally as an expert and successful inventor in the concrete field and, in particular, in vacuum treatment of concrete. It is clear in the record that both the parties to this interference thought it necessary for an employee of appellee's company to go to the plant where appellant was employed in order to demonstrate the method and the apparatus of appellee and to teach the use of such apparatus and method to employees of the American Type Founders, Incorporated. Furthermore, that company, which it will be remembered, was the assignee of appellant, entered into a contract with Vacuum Concrete, Inc., assignee of appellee, in which it was stated "Whereas Vacuum represents that it is the owner of * * * and likewise of all rights in and to a certain vacuum process, useful among other things, for precasting hollow-wall concrete panels embodied in said letters patent * * *." The Board reasoned and we are in agreement with it that if appellant were the in-

ventor of "certain vacuum process," it did not understand why appellant's assignee was willing to pay royalties therefor.

In commenting upon the objection by counsel for appellant to the admission of evidence establishing the qualifications of appellee in the concrete and vacuum concrete fields, the Board cited Miller v. Kelley, 18 App.D.C. 163, and De Forest v. Richards, 49 App.D.C. 257, 263 F. 653.

The issue here is based entirely upon a question of fact and we are unable to find error in the decision appealed from in that respect. Chandler v. Mock, 202 F.2d 755, 40 C.C.P.A., Patents 846.

Several of appellant's reasons for appeal concern the issue of *res judicata* stemming from a judgment of the Superior Court of New Jersey, Union County, in an arbitration proceeding. We find in the record in connection with such proceeding and judgment the following:

"No award is made in connection with the claim of Vacuum Concrete, Inc. regarding Interference No. 84,528 as questions involved in this Interference are not properly within the scope of paragraph 13 of the agreement dated September 1, 1945 and hence are not subject to arbitration under said agreement."

Therefore, there need be no discussion of those assignments of error.

Summarizing, we may state that appellant indisputably contacted the Vacuum Concrete, Inc. on May 3, 1945 and up to that time it is clear from the record that appellant had done nothing but theorize and had never employed vacuum treatment. From that date, all of the information flowed from appellee to appellant and appellant's assignee sent forms of materials to appellee's company, which were used in the developing of the invention defined in the counts. The demonstration in the latter part of May 1945, which was conducted at the plant of appellee's assignee in Philadelphia, was attended by appellant in the presence of his assignee. And, while as herein-

before noted, the demonstration was not completely successful, the lack of success was due to the failure to keep the vacuum on long enough at the time it was tried to turn over the slab.

We are of the opinion that the Board has not erred and, therefore, its decision is affirmed.

Affirmed.

JACKSON, Judge, retired, sat in place of GARRETT, Chief Judge.