BADER v. BURROUGHS.

(Court of Appeals of District of Columbia. Submitted November 17, 1919. Decided December 1, 1919.)

No. 1266.

1. PATENTS ⬤⚊91(1)—BURDEN OF PROOF ON JUNIOR PARTY IN INTERFERENCE PROCEEDINGS TO ESTABLISH PRIORITY.

In interference proceeding, where the senior party is a patentee, the burden of proof is heavily on the junior party to establish his priority of invention.

2. PATENTS ⬤⚊91(4)—EVIDENCE INSUFFICIENT TO ESTABLISH PRIORITY IN JUNIOR PARTY.

In an interference proceeding over an eyeglass mounting improvement, evidence held not to sustain findings by the board and Assistant Commissioner of Patents awarding priority to the junior party, in view of evi-

dence that the patentee's attorneys had forwarded drawings of the device for a search as to patentability on the same day the junior party claimed to have disclosed the invention.

Appeal from a Decision by an Assistant Commissioner of Patents.

Interference proceeding in tthe Patent Office between Gustav A. Bader and Emor Ridley Burroughs. From a decision by an Assistant Commissioner of Patents awarding priority to Burroughs, Bader appeals. Reversed, and priority awarded Bader.

C. S. Davis, of Rochester, N. Y., for appellant.

Howard P. Denison and E. A. Thompson, of Syracuse, N. Y., for appellee.

ROBB, Associate Justice. Appeal from a decision of an Assistant Commissioner of Patents in an interference proceeding awarding priority of invention to the junior applicant; he having copied the claim of appellant's patent, reading as follows:

"In an eyeglass mounting, the combination with a bridge provided with a noncircular opening and a flat surface surrounding the opening, of a pivot stud comprising a portion fitting in and conforming to the noncircular opening, a cylindrical bearing portion, a shoulder at the junction of the bearing portion with the noncircular portion, said shoulder engaging the flat surface of the bridge, and a flange spaced from said flat surface; a screw engaging the post and the bridge and holding the shoulder against the flat surface, a nose clamp lever pivoted to the stud and engaging the flange and the flat surface of the bridge, and a spring secured at one end to the stud and at the other end to the nose clamp lever."

[1, 2] At the time the invention was made the parties were in the employ of the Standard Optical Company, of Geneva, N. Y., Burroughs as superintendent and Bader as an expert designer of eyeglass mountings. Burroughs was not an inventor, while Bader had taken out several patents relating to this art. It is conceded that Bader was the inventor of a structure like the device of the issue, except that the end of the post supporting the guard was offset, and hence not readily removable. In other words, in the device of the issue a screw has been substituted for the offset. For this substitution or change each of the parties claims credit. The Examiner of Interferences awarded priority to Bader, while the Board and Assistant Commissioner found for Burroughs.

At the time the controversy arose, and thereafter until Bader canceled the license, the company was paying him a royalty on the mounting, minus the screw feature. Some complaint was made because the guard was not removable, and, on the 13th of April, 1915, two representatives of the Geneva Optical Company were in conference with Burroughs at the factory of the Standard Optical Company. During the latter part of this interview, which took place after lunch, some one suggested that by putting a screw in place of the offset or rivet the mounting could be more easily repaired. Burroughs says he made this suggestion. The two representatives of the Geneva Company do not remember who made it. One of them testified, under cross-examination, that most mountings of this character were made with a screw, and that the substitution of the screw for the fixed head or off-

set "was the obvious thing." Bader was called in, and the matter discussed. Burroughs at first testified that the interview terminated between 4 and 4:30 in the afternoon, and that he thought Bader was there at that time.

Later Mr. Dorsey, the attorney who prepared the application for Bader at Rochester, N. Y., a very frank witness and entirely disinterested at the time of his testimony, produced for Bader a drawing of the invention, dated April 13, 1915, and which he testified was on that day sent to his correspondent in Washington for the purpose of a search as to patentability. To the best of Mr. Dorsey's recollection, the drawing was made "from a description furnished by Mr. Bader at some time before making the search." Judging from the appearance of the sketch, the witness was certain it had been done when he had plenty of time on his hands, and not in the course of an interview with Bader. The witness was quite sure that the communication from Bader was at a personal interview; that, had the fact been otherwise, he in all probability would have remembered it. The stenographer, to whom the letter accompanying the drawing was dictated by Mr. Dorsey on the date mentioned, stated that her notebook showed she had taken other dictation that day after the letter in question was dictated to her.

Following this testimony Mr. Burroughs was recalled to the stand, and asked whether he knew where Mr. Bader was in the afternoon of April 13th, and, notwithstanding his former statement that Bader was at the factory when the interview closed at 4 o'clock, or later, replied that he did not. He further stated that it was Bader's habit to go to Rochester from Geneva by motorcycle, a distance of approximately 46 miles. Bader testified positively that he was not in Rochester on the 13th, and that his disclosure to Mr. Dorsey was prior to that time. We do not deem it necessary further to discuss the evidence, save to say that the bill for the filing of Bader's application was paid by the Geneva Company.

Since Bader is a patentee, the burden is heavily on Burroughs, and in our view he has entirely failed to sustain it. He does not even claim to have done more than suggest a slight and, according to his own witness, obvious modification of one of the elements of a structure admittedly Bader's and he really is not corroborated as to that, while the testimony of Mr. Dorsey and the drawing produced by him conclusively establish, we think, that Bader was in possession of the invention before the interview at which Burroughs says he (Burroughs) first disclosed it. Moreover, this "obvious thing" was more likely to occur to Bader, the expert, than to any one else.

The decision is reversed, and priority awarded Bader.

Reversed.