Vernon C. HASKELL, Larry L. Hench and Paul C. Yates, Appellants,

v.

Neville COLEBOURNE, Nicholas Rolfe, Kevin Thomas McAloon and Michael Leslie Orton, Appellees.

Appeal No. 81–599.

United States Court of Customs and Patent Appeals.

Feb. 25, 1982.

---

**2.** It is noted that no rejection for indefiniteness under 35 U.S.C. § 112 is before the court.

Robert J. Shafer, Wilmington, Del., and Hoge T. Sutherland, Arlington, Va., for appellants.

Watson T. Scott, and Susan T. Brown, Washington, D.C., for appellees.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

RICH, Judge.

This appeal is from the unreported decision of the United States Patent and Trademark Office Board of Patent Interferences (board) in Interference No. 99,782 awarding priority of invention to the senior party Colebourne et al., the inventors named in application serial No. 625,005, filed October 23, 1975, now assigned to Chemical Industries, Ltd., over the junior party Haskell et al., the inventors named in U. S. Patent No. 3,853,591, issued December 10, 1974, upon application serial No. 330,389, filed February 7, 1973, assigned to E.I. du Pont de Nemours & Co. We reverse.

## Background

The invention, a coating material having improved moisture and gas impermeability

(used on organic polymeric materials such as films, containers, bottles, fibers and the like prepared from polyesters, polyalkyls, etc.), is described by two phantom counts in Jepson format:

1. In an organic, polymeric shaped article having a substantially continuous, gas impermeable coating on at least one surface thereof, comprising metal ortho-phosphate wherein the metal is aluminum or iron and the ratio of metal to phosphate is about 10 to 0.35, the improvement wherein some of the metal ions are replaced by tin, titanium, or zirconium ions.

2. An article of Count 1 wherein the shaped article is a film.

Haskell and Hecht filed an application for U.S. patent on September 22, 1971, a continuation-in-part application on July 19, 1972, and on February 7, 1973 filed a divisional application (also designated a continuation-in-part) in which there was a change of inventorship to Haskell, Hench, and Yates. Colebourne et al. (Colebourne) filed an application for British patent on November 26, 1971, and a U.S. application on July 17, 1972. The Colebourne application in interference is a division of their 1972 application. Pursuant to the Primary Examiner's decision on motions, Haskell et al. (Haskell) was denied benefit of the 1971 application filing date and Colebourne was denied the benefit of their British application filing date, resulting in Colebourne becoming senior party.

No testimony was taken. Colebourne, being foreign inventors, relied solely on their effective filing date, and Haskell, pursuant to 37 CFR 1.272(c), submitted three pages of stipulated testimony with 14 exhibits attached.

### The Board Opinion

Appellants urged below that coinventor Haskell's notebook entries, monthly reports, correspondence, and the preparation of a patent application in the name of Haskell and Hecht (Yates and Hench were later added and Hecht was later removed in an inventorship change in a divisional application) were sufficient to establish conception and a reduction to practice before July 1972. However, because the notebook entries were "not explained by a witness," the board held that Haskell had failed in their burden of proof. The board further stated that:

We do not find that Haskell's monthly reports, correspondence and preparation of a patent application establish evidence of conception or reduction to practice by the inventors of the interfering application, i.e., Haskell, Hench and Yates. Priority proofs must inure to the benefit of the named inventive entity. *Linkow v. Linkow*, 517 F.2d 1370, 186 USPQ 223 (CCPA [Cust.&Pat.App.] 1975). We find no statements in the stipulated record before us, by Hench and Yates, that they are in fact co-inventors with Haskell or that the work was done for their benefit. Nor do we have an explanation why Hench and Yates did not testify. In view of the foregoing, we find that the record presented by Haskell is insufficient to establish that the named inventive entity Haskell, Hench and Yates have proved by a preponderance of evidence that they did in fact conceive and reduce to practice the invention in issue prior to July 1972. Since we find no evidence of conception, we do not reach the issue of whether there was diligence.

Stating that the "invention is not disclosed in the United Kingdom application with the requisite degree of certainty," the board also held that Colebourne had not complied with 35 U.S.C. § 119 and were thus not entitled to the benefit of their British application filing date:

The disclosure directed to the use of compounds of a transition metal or of metals of Groups I to IV of the Periodic Table encompasses too numerous a list of available metals with no direction or indication that titanium is the intended metal,

or that the selection of titanium would result in an improvement over other transition metals or metals of Groups I to IV. Thus, such disclosure does not inevitably lead the person skilled in the art to appropriately choose titanium from all the metals of Groups I to IV or from the transition metals for the coated article of the count.

In a petition for reconsideration, Haskell urged that there was no issue as to inventorship of the subject matter, the correction thereof in the February 7, 1973, application being nunc pro tunc with respect to the July 19, 1972, application, and that their patent application, drafted on July 13, 1972, should properly be considered as evidence of conception on that date, after which they diligently proceeded toward reduction to practice, evidenced by their July 19, 1972, filing date. Haskell argued that since the "application has been accepted as a constructive reduction to practice of the invention of the counts, no one could seriously contend that it does not contain a conception of that invention." The board stated that the above represented a new argument, never fairly presented for all to consider, and, "having reviewed the circumstances," did not find itself "compelled to render a new decision." The "circumstances" referred to by the board were that Haskell, "in view of the recognition of a correction of inventorship in a continuing case," "should have considered the effect of such correction when he submitted evidence as to conception of the count by the named inventive entity of the involved application."

## OPINION

Appellants must establish that they actually reduced to practice the invention of the counts before July 17, 1972, Colebourne's actual U.S. filing date, or that they conceived the invention prior to that date and proceeded with diligence toward a reduction to practice, either actual or constructive. *Boyce v. Anderson*, 451 F.2d 818, 820, 171 USPQ 792, 793 (9th Cir. 1971).

Appellants do not argue that the board erred in holding that their evidence of actual reduction to practice was defective. Instead, they maintain that their application as filed on July 19, 1972, two days after appellees filed, evidences a constructive reduction to practice of the invention claimed in their patent. Because this contention has not been questioned, appellants argue that the document (with only minor changes having been made) is proof of conception as of the date it was prepared, July 13, 1972.

This position is directly supported by *Spero v. Ringold*, 54 CCPA 1407, 377 F.2d 652, 153 USPQ 726 (1967). In that case, the board had concluded that the disclosure in a patent application was adequate to establish a constructive reduction to practice of a count in interference, but held that the same disclosure in a pre-filing draft of that application was insufficient to establish conception. In reversing that decision, this court stated:

> We fail to see why the act of filing an application to entitle an applicant to a date of constructive reduction to practice imparts anything more to the disclosure than a procedural advantage. It cannot and does not *change the import of the disclosure*. On the instant before filing, the disclosure teaches no more and no less than it does on the instant after filing. Thus, if the application as filed discloses the invention in issue, as the board has here assumed that it does, it seems inconsistent to deny the *same effect* to the *same disclosure* in a prior but unfiled draft of the same application.

*Id.* at 1416, 377 F.2d at 660, 153 USPQ at 731–32 (emphasis in original). This view is supported by both logic and prior case law. *E.g., Mortsell v. Laurila*, 49 CCPA 1028, 1033, 301 F.2d 947, 951, 133 USPQ 380, 384 (1962) (preparation of patent application which, as filed, PTO never objected to on § 112 grounds, sufficient to establish conception); *Walker v. Bailey*, 44 CCPA 998, 1001, 245 F.2d 486, 488–89, 114 USPQ 302,

304 (1957) (disclosure by inventor, used by his patent attorney to prepare a draft application, together with their testimony, was sufficient to establish conception as of date the draft was prepared); *Smith v. Kliesrath*, 28 CCPA 1293, 1296–97, 120 F.2d 1015, 1017–18, 50 USPQ 82, 84 (1941) (conception was established at least as early as the date a draft of a patent application was finished by a patent attorney on behalf of the inventor); *Brown v. Barton*, 26 CCPA 889, 892–894, 102 F.2d 193, 195–96, 41 USPQ 99, 101–02 (1939) (inventor entitled to date of conception as of the time his patent attorney was in full possession of the invention); *King v. Young*, 26 CCPA 762, 771, 100 F.2d 663, 670, 40 USPQ 176, 183 (1938) (conception established as of date application for patent, even though never filed, was signed by applicant and notarized); *Bader v. Burroughs*, 49 App.D.C. 136, 138, 261 F. 1016 (1919); *McCormick v. Cleal*, 12 App.D.C. 335, 338 (1898). And it is irrelevant that the draft application in this case was not executed until July 17, 1972, for it has been stated, in accordance with the above, that "conception is less a matter of signature than it is one of disclosure." *Cislak v. Wagner*, 42 CCPA 700, 710, 215 F.2d 275, 282, 103 USPQ 39, 44 (1954).

■ Appellees do not argue that the application as filed does not represent a constructive reduction to practice of the invention or that the July 13, 1972, draft of that application does not evidence a conception of the invention. They argue instead that a draft application prepared on behalf of Haskell and Hecht cannot stand as evidence of a conception of the invention by Haskell, Hench and Yates.

We agree with appellants, however, who respond that a patent attorney does not necessarily prepare a patent application on behalf of particular named persons, but on behalf of the true inventive entity.

Furthermore, it is anomalous to recognize the July 19, 1972, application as a constructive reduction to practice of the invention by Haskell, Hench and Yates, even though

it named Haskell and Hecht as coinventors, but to hold that the draft application does not represent evidence of conception by Haskell, Hench and Yates because it was prepared "on behalf of" Haskell and Hecht.

■ This anomaly is inherent in the statement of the board that, *"priority proofs must inure to the benefit of the named inventive entity."* (Emphasis ours.) Constructive reduction to practice is often a "priority proof," which in this case apparently inures to the benefit of the "named inventive entity" only because of a later change of inventorship. Should not that same change of inventorship, where there is no issue as to the propriety thereof, ensure that all "priority proofs" which are probative inure to the benefit of the true inventive entity?

The board cited *Linkow v. Linkow*, 517 F.2d 1370, 186 USPQ 223 (Cust.&Pat.App. 1975), in support of its above statement. That case, however, makes no such requirement as to *priority* proofs. In fact, it was stated therein that the "sole question is one of *who* conceived the invention"; it was "the *fact* of joint inventorship" that was in issue. *Id.* at 1373, 186 USPQ at 225 (emphasis ours). The question was not one of *date* of conception, as it is here, and the court distinguished two cases cited to it for the reason that "each involved a *priority* contest—not the question of *who* conceived the invention." *Id.* (emphasis ours).

■ In contradistinction, there is no issue in this case as to inventorship, only priority. And unless there is a challenge to inventorship, the presumption that appellants are joint inventors is controlling. *See Monsanto Co. v. Kamp*, 269 F.Supp. 818, 823, 154 USPQ 259, 261 (D.D.C.1967) (cases cited). Further, there appears to be no reason why evidence of conception naming only one of the true inventive entity cannot inure to the benefit of and serve as evidence of conception by the complete inventive entity, whether initially thought to be joint inventors or only considered to be such later,

upon a change of inventorship during prosecution.

The practice of naming true inventors should not be discouraged by ruling that Haskell alone could have prevailed herein, but that he loses because the other two members of the true inventive entity were, without deceptive intention, not named in the original application. *Cf. Lemp v. Randall*, 33 App.D.C. 430, 433–34 (1909) ("There is a vast difference between the testimony of a party to an interference proceeding as to when he conceived an invention, and his testimony conceding that another contributed as much as he to the conception of an invention. In the former case, he is testifying in his own interest; in the latter, directly against his own interest. Randall could have had no possible ulterior motive in testifying that Bates was jointly entitled to credit for the invention. On the contrary, it was in his interest to contend otherwise, for, with Bates eliminated, he would have been the sole owner of the invention.").

■ The board also considered appellants' case defective because it found "no statements in the stipulated record * * * by Hench and Yates, that they are in fact co-inventors with Haskell or that the work was done for their benefit. Nor do we have an explanation why Hench and Yates did not testify." The fact that there is no statement in the "stipulated record" (sic) to the effect that appellants are joint inventors is irrelevant when there are such statements, sworn to by the parties, in the *certified* record. This interference was declared on the basis of the inventions disclosed in a patent application and an issued patent and we will not ignore them and their file histories simply because they have not been referred to in a stipulation of *testimony* under 37 CFR 1.272(c). (Appellants have not stipulated "the facts in the case," that is, the "record.")

■ In any event, as previously noted, there is no genuine issue in this case as to the *fact* of joint inventorship. Hence, there

need be no statements at all "that they are in fact co-inventors with Haskell." Neither need there be testimony to the effect that the work of the patent attorney was done for their benefit, for as previously noted, that work inured to the benefit of the true inventive entity. And, having proper evidence of conception. by the true inventive entity, the board did not need "an explanation why Hench and Yates did not testify." *Borror v. Herz*, 666 F.2d 569, 574–75, —— USPQ ——, - —— (Cust.&Pat.App.1981).

■ Notwithstanding the foregoing, appellees argue that we should not reach the questions of conception and diligence with respect to the patent application draft because the board "has never considered the issues and evidence as now presented." However, Haskell clearly raised the matter in their reply brief before the board and, although they argued the conception and diligence issues most vigorously in their petition for reconsideration before the board, the board apparently did consider them, failing to comment upon the merits thereof only because they believed that the presence of "a correction of inventorship in a continuing case" rendered appellants' proofs defective. Given that the issues were raised both in appellants' reply brief and their petition for reconsideration before the board, we have also considered these questions. *Cf. Linkow v. Linkow*, supra at 1374, 186 USPQ at 226.

■ Finally, appellees have argued that the board erred in holding that they were not entitled to the filing date of their British patent application. We agree with the board's disposition of this issue and adopt that portion of its opinion, quoted supra, as our own.

### Conclusion

■ Because appellants properly demonstrated a date of conception before appellees' filing date, the only date they need demonstrate, *Jung v. Scholl*, 17 CCPA 805, 807–08, 37 F.2d 761, 762–63, 4 USPQ 392,

393 (1930), and since they and their attorney were all diligent in constructively reducing the invention to practice (evidenced by the July 19, 1972, filing date), the diligence of the latter inuring to their benefit, *Gianladis v. Kass*, 51 CCPA 753, 760–61, 324 F.2d 322, 328, 139 USPQ 300, 305 (1963), appellants are entitled to an award of priority.

The decision of the board awarding priority to Colebourne is *reversed.*

REVERSED.