Leonard I. LINKOW, Appellant,

v.

Leonard I. LINKOW and Alfred E. Edelman, Appellees.

Patent Appeal No. 74–597.

United States Court of Customs and Patent Appeals.

June 30, 1975.

Rehearing Denied Sept. 4, 1975.

Harold James, James & Franklin, P. C., New York City, attorney of record, for appellant.

William W. Schwarze, Ronald L. Panitch, Seidel, Gonda & Goldhammer, P. C., Philadelphia, Pa., attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This is an appeal by the senior party, Linkow, from the decision of the Board

of Patent Interferences [1] awarding "priority" to the junior party, Linkow and Edelman. Under the unusual facts of this case, the issue of "priority" turns on the question of who conceived the invention. Burden of proof was on the junior party. We reverse.

## BACKGROUND

The interference involves a device to be implanted in a patient's jawbone, to extend above the gum, and to provide support for an artificial tooth. Fig. 1 of Linkow's patent and count 1 (bracketed numerals added) adequately illustrate the invention:

1. A device for permanently implanting an artificial tooth into the mouth of a patient, said device comprising an implanting portion [28] in the form of a comparatively thin blade having an opening [36] provided therein and having its lower free end [42] formed into a sharp edge capable of being directly forced into the bone structure [26] of the patient, and a comparatively massive support portion [30] extending upwardly from and operatively joined to the upper end of said implanting portion and adapted to have an artificial tooth structure [10] secured thereon, said support portion constituting means adapted to have a

force applied thereto and effective to transmit said force to said implanting portion, thereby to drive said implanting portion into the bone sufficiently to securely retain said device, and the artificial tooth structure applied thereon, on said bone.

Only Edelman took testimony, Linkow limiting himself to cross-examination of Edelman's witnesses and the introduction of exhibits. Linkow, in his brief before the board, made the following admissions based on the testimony of Edelman (page numbers omitted):

1. Dr. Edelman became active in the field of dental implants in 1965 and from that time on he has lectured, taught and attempted to further the use of implants in dentistry.

2. Dr. Edelman has worked as an inventor in this field during this time. (Exhibits 1, 2, 3, 4 & 5 are patents bearing his name as inventor.)

3. Dr. Edelman has worked with Dr. Linkow to make inventions in this field. Exhibit 2 (Patent Number 3,499,222) and Exhibit 5 (British Patent Number 1,203,093) pertaining to implants bear the names of Dr. Linkow and Dr. Edelman as joint inventors.

4. Dr. Edelman has been associated with Dr. Linkow regularly from 1965 to the time of taking the deposition.

5. Dr. Edelman and Dr. Linkow during that time had a working agreement to further the field of implantology through lectures and other means. They met together and attended lectures together towards this end.

6. Drs. Linkow and Edelman conferred together on a number of occasions, personally and through telephone and correspondence, with respect to the patents in this field upon which they jointly appear as inventors.

1. Interference No. 97,333 between Linkow (on his patent No. 3,465,441 for "Ring-Type Implant for Artificial Teeth," issued September 9, 1969, based on an application filed March 20, 1968) and Linkow and Edelman (on their application serial No. 804,738 for "Wide Vent Dental Implants," filed February 24, 1969, under Rule 47(a), 37 CFR 1.47(a), Linkow having refused to join in the application).

7. Dr. Linkow and Dr. Edelman participated in a lecture course at the Institute of Graduate Dentists on September 15–17, 1967. They had been associated in giving courses in implantology for about a year and a half prior to this course.

8. During this course, Dr. Edelman met Dr. Linkow in a restaurant at which time approaches to implantology embodied in the Linkow patent were talked about.

9. Further discussions on this subject took place thereafter between Dr. Edelman and Dr. Linkow with respect to the specific design of the implants defined by the counts herein.

10. Thereafter, the new implant was disclosed by Dr. Edelman to the draftsmen at Nichols [Products Co.] and drawings of it were made.

11. Prototypes were manufactured from these drawings and delivered on 11/20/67 to Dr. Edelman who immediately took them to show to Dr. Linkow.

12. The invention was first implanted in a patient's mouth by Dr. Edelman and a Dr. Faye on or about November 20, 1967.

13. This implantation was, according to Dr. Edelman, successfully completed.

14. By 1969, these implants were in wide use and were being used by dentists throughout the world.

The meeting referred to in admission No. 8 requires further elaboration. One of the attendees at the lecture course, Dr. Roberts, was unable to attend a regularly scheduled lecture and, therefore, was privately instructed by Edelman. Roberts disclosed to Edelman an implant device that he had developed similar to that covered by the counts. According to the record, the only difference between Roberts' device and the invention defined by the counts is the sharp edge at the lower free end of the implant. After their private session Edelman took Roberts to the restaurant to meet Linkow, and the three dentists discussed Roberts' device. It is undisputed that out of this discussion came conception of the invention defined by the counts.

Edelman told others about the invention shortly after the meeting, and two of them so testified (Dr. Faye and Miss Selma Hahn). Roberts was not called as a witness. On May 12, 1972, apparently nine days after the close of his testimony period, Edelman filed a motion for extension of time under Rule 281, 37 CFR 1.281, to take the testimony of Roberts. The motion was denied because the period had already been extended more than three months and there was no showing that Edelman had made any attempt to obtain Roberts' testimony or had been unable to procure his testimony before expiration of the extended period for taking testimony.

The board awarded "priority" to the junior party, reasoning that the filing of a Rule 47(a) application by Edelman and his testimony of joint conception, when coupled with proven reduction to practice and "possession of conception" of the invention prior to the filing date of Linkow, are prima facie evidence of conception by Linkow and Edelman as joint inventors. The board asserted that no corroborating testimony of joint conception had been introduced, but said there was no evidence by Linkow to contradict Edelman's testimony. It cited *Desch* v. *Dickinson*, 99 USPQ 218 (POBI 1950) and *Lemp* v. *Randall*, 33 App.D.C. 430, 1909 C.D. 455 (1909) for its position that the uncorroborated testimony of joint inventors is sufficient to establish the fact of joint inventorship. Rejecting Linkow's argument that Edelman was required to prove joint conception, the board said it knew of no authority "that requires a junior party to make more than a prima facie showing of prior inventorship." Edelman, it added, had made such a showing by proving that he was in possession of conception of the invention and had reduced it to practice for the benefit of himself and Linkow jointly prior to the filing date of Linkow.

## OPINION

██ The sole question is one of who conceived the invention, and the junior party had the burden of proving by a preponderance of the evidence that the invention was jointly conceived.[2] Compare *Roensch v. Billner*, 212 F.2d 193, 41 CCPA 859 (1954), with *Applegate v. Scherer*, 332 F.2d 571, 51 CCPA 1416 (1964).

██ The board erred in stating that the uncorroborated testimony of joint inventors is sufficient to establish the fact of joint inventorship. The cited cases of *Desch v. Dickinson*, supra, and *Lemp v. Randall*, supra, are clearly distinguishable from this case on their facts. Each involved a priority contest—not the question of who conceived the invention—and in each case the joint inventors had at one time agreed that they were joint inventors. Here, the parties have consistently disagreed over whether there was joint conception.

The amount and quality of corroboration required is determined by a "rule of reason." *Tomecek v. Stimpson*, 513 F.2d 614 (CCPA 1975). However, the corroborative evidence here is seriously deficient. The testimony of the corroborating witnesses lacks specifics and is based entirely on what they were *told* by Edelman. For example, Dr. Faye testified as follows:

Q66. You referred earlier in your testimony to some of the meetings that you had with Dr. Edelman in September, 1967. Did you have more than one meeting? A. Well, I will tell you, we had a very—I would say a more detailed meeting on the conference, Dr. Roberts and Dr. Linkow and Dr. Edelman had at the Stratford Pub. And we were going back home in Dr. Edelman's car, and we stopped at the

Howard Johnson's Restaurant. And present there we had Mrs. Ackerman and Miss Hahn and, of course, Dr. Edelman and myself, and we sat down to eat. And we had a conference there of at least 45 minutes—50 minutes on the drawings and the plans and the concept, Dr. Roberts' concept of this broad implant, and also what Dr. Linkow suggested about it and perhaps how to improve on it, and what Dr. Edelman said about it.

And Dr. Edelman drew on a piece of paper various designs, some of which are shown here. And I see some which Dr. Roberts even shows today on some circulars. So we had a big conference. Of course, I asked a great many questions at that time, how Dr. Roberts inserted his, and the efficaciousness of it, and what would you say what was the prognosis of what it would be. They all felt it was—at that time, of course, there was more metal to bone than the ordinary screw type or the pin, and they thought it had great possibilities.

On cross-examination, Dr. Faye further testified:

Q1. Dr. Faye, you have testified about a meeting between Dr. Roberts, Dr. Linkow and Dr. Edelman. You were not present at that meeting, were you? A. I was not.

Q2. The only thing you know about that meeting is what Dr. Edelman told you? A. What Dr. Edelman told me right in the lobby.

Miss Hahn's testimony included the following:

Q18. When did you first become familiar with the type of implant having a sharpened edge and holes? A. Dr. Edelman made some sketches that I

**2.** Linkow argues that, because Edelman knew of Linkow's application before he filed the Rule 47(a) application, the junior party's burden of proof should be "beyond a reasonable doubt or by clear and convincing evidence." However, the burden of proof of the junior party where applications were copending is by a preponderance of the evidence. *Kawai v.*

*Metlesics*, 480 F.2d 880 (CCPA 1973). This is so even in cases such as this where the question of who conceived the invention is involved and the junior party, before filing his application, was aware of the senior party's claim to the invention. See *Barnet v. Wied*, 195 F.2d 311, 39 CCPA 882 (1952); *O'Donnell v. Hartt*, 75 F.2d 195, 22 CCPA 958 (1935).

had seen. And I can mention that the very first time I had heard about it was on the end of the course when I was riding home with him and Dr. Faye and Pearl Ackerman. We were discussing this in the car going home from the course in New York, and we stopped at a Howard Johnson's. And there in Howard Johnson's he made some sketches talking about this flat surface with the sharpened edge and holes in it, the blade vent.

Q19. Who was it that disclosed that to you? A. Dr. Edelman.

Moreover, it does not accord with "reason" that the *only* other person present at the time the invention was conceived, Roberts, was not called as a witness by the junior party. From the record it appears that Roberts would have been a disinterested witness, well versed in the subject matter of the invention and in the best position to corroborate Edelman's testimony. Edelman's failure to call Roberts as a witness must weigh heavily against his position on joint conception. *Winkelmann* v. *Calvert*, 129 F.2d 536, 541, 29 CCPA 1200, 1210 (1942); see *Interstate Circuit, Inc.* v. *United States*, 306 U.S. 208, 226, 59 S.Ct. 467, 83 L.Ed. 610 (1939); *Alexander* v. *Blackman*, 26 App.D.C. 541, 1906 C.D. 602 (1906). Although Edelman made a belated attempt to secure the testimony of Roberts, there is no showing that his delay was because Roberts was unavailable. Compare *Anderson* v. *Pieper*, 442 F.2d 982, 58 CCPA 1221 (1971), with *Ireland* v. *Smith*, 97 F.2d 95, 99, 25 CCPA 1258, 1263–64 (1938). As this court said in *Smith* v. *Hayward*, 193 F.2d 198, 39 CCPA 748 (1951):

> [W]here counsel by due diligence could have adduced the controverted evidence in the interference proceeding, a party or his legal representative may not be relieved here of his inadvertence or neglect.

Although Edelman argues that the issue concerning the failure to call Roberts as a witness was not properly presented or raised before the board and cannot be raised on appeal, we note that this issue was raised by Linkow in his Request for Reconsideration before the board and that the board, in its opinion on reconsideration, "carefully considered" all arguments presented by Linkow.

 Edelman also argues that, because of Linkow's failure to present any testimony, he is in no position to complain about the failure to call witnesses. However, no adverse inference can be drawn from a senior party's refraining from taking testimony, because he has a right to stand on his position that the junior party failed to establish a prima facie case.

In view of the foregoing, we hold that the junior party failed to carry its burden of proving that the invention was jointly conceived.

The decision of the board is *reversed.*

*Reversed.*